**E. I. DU PONT DE NEMOURS & COMPANY**

v.

**PHILLIPS PETROLEUM COMPANY and Phillips Chemical Company.**

Civ. A. No. 2006.

United States District Court
D. Delaware.

Sept. 14, 1959.

On Motion for Reconsideration and to Amend Order Nov. 30, 1959.
See 24 F.R.D. 435.

William S. Megonigal, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., W. Philip Churchill, of Fish, Richardson & Neave, New York City, Edward B. Beale, Washington, D. C., for plaintiff.

Thomas Cooch, of Connolly, Cooch & Bove, Wilmington, Del., Thorley von Holst, Sidney Neuman, and Donald A. Peterson, of Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., for defendants.

KIRKPATRICK, District Judge.

In this patent infringement suit the Court is now called upon to pass upon a large number of separate controversies arising in the course of extensive [1] discovery proceedings which have been halted pending the Court's rulings. The matters involved are objections to certain requests by both parties for production of documents under Rule 34, 28 U.S.C.A., the defendant's objections to certain interrogatories filed by the plaintiff, and motions by the defendant under Rule 37 to compel two witnesses to answer certain questions propounded in the course of Rule 26 depositions.

The two claims in suit are for a product, the properties of which are set forth in Claim 1 as follows:

"1. Solid polyethylene, exceptionally stiff, having an amorphous content of not more than 10%, containing side chains, at a frequency of less than 1 side chain per 200 carbon atoms in the main chain as determined by infra-red absorption analysis, having a melting point above 127° C., a tensile strength, based on original dimensions, between

---

1. Up to now, some two thousand pages of depositions of fifteen of the plaintiff's employees have been taken and more than nine thousand pages of documents have been informally produced.

about 2900 and about 11,800 pounds per square inch, a relative viscosity above 1.0 and up to about 1.5 measured at 0.125% concentration in xylene at 85° C., and a density (annealed) in the range of 0.95 to 0.97."

This, the plaintiff contends, describes a new and greatly superior plastic having almost unlimited commercial possibilities.

The patent was originally applied for in 1947 and issued on December 17, 1957. The defendant on the latter date was manufacturing and licensing others to manufacture a product known as "Marlex 50" which is the defendant's trade name for the product alleged to infringe.[2]

Soon after the patent issued negotiations were begun between the parties looking toward the possible licensing of the defendant. In the course of these negotiations the plaintiff invited one of the defendant's experts to observe tests conducted by it, with the object of demonstrating that the defendant's product infringed, but the expert remained unconvinced and the negotiations broke down. This suit was begun almost immediately thereafter, on June 20, 1958.

### The Work Product Objections

■ Probably more than half of the numerous objections presently before me are based either wholly or in part on the ground that the matters asked for are "work product" of lawyers and, hence, require more than an ordinary showing of good cause. Although, so far as I know, it has not been adopted by the Supreme Court, the term has come to be used rather extensively by judges and lawyers as a convenient name for the embodiments of a broad policy that a law-

yer, doing a lawyer's work in preparing a case for trial, should not be hampered by the knowledge that he may be called upon at any time to hand over the results of his work to his opponent.

The concept is quite distinct from the common-law attorney-client privilege which is supported by entirely different reasons and it merely creates confusion to refer to it as a privilege or even a "qualified privilege".[3] It was summed up by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451, as a "general policy against invading the privacy of an attorney's course of preparation", and the Court went on to say that "a burden rests on the one who would invade that privacy to establish adequate reasons to justify production". The Court of Appeals for the Third Circuit in Alltmont v. United States, 177 F.2d 971, 978, found warrant in the Supreme Court's opinion for interpreting the "adequate reasons" for ordering production referred to in that opinion as "special circumstances" in the particular case which make it "essential to the preparation of his case and in the interest of justice that the statements be produced."

■ The subject matter of the discovery proceeding which was before the Court for review in the Hickman case, supra, was statements, written and oral, obtained by a lawyer from witnesses, and either prepared or recorded or remembered by him. The language used by the Court in its discussion of the policy in question was broad enough to apply to subjects of discovery other than statements of witnesses, but certainly it was not suggested that, if a lawyer obtains knowledge of relevant facts, as distin-

2. There are also process claims, but it is conceded that the defendant is not employing the process of the patent but a substantially different one under a patent of its own, issued to Hogan and Banks, March 4, 1958.

3. The relevancy of this to the present proceeding is that one of the parties in connection with some of its objections argued that, because the other party had voluntarily produced certain documents, it had waived its objection to all the documents of similar character, as might have been the case if it had been attempting to assert a true privilege.

guished from statements of witnesses taken by or for him, he can suppress the information so obtained simply by pointing out that he is a member of the bar. In other words, the principle does not afford any universal protection against disclosure of facts merely because they have been discovered by or have come to the attention of a party's lawyer in the course of preparing the case. The Supreme Court made this limitation clear, saying "A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney," and further, " * * * Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." [4] Hickman v. Taylor, supra, 329 U.S. at pages 504, 511, 67 S.Ct. at pages 390, 394.

■ To sum up: So far as the policy of the law referred to calls for anything more than an ordinary showing of good cause, (1) the rule is not necessarily limited to statements of witnesses, (2) it applies only when the information asked for has been acquired by the lawyer in preparing a case for trial, and (3) it applies only to matters obtained or produced by the lawyer through work which involves his professional skill and experience.

As to the last point, the opinion in Hickman v. Taylor, supra, 329 U.S. at page 511, 67 S.Ct. at page 393, is clear and definite, "Proper preparation of a client's case demands that he (the lawyer) assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case * * * as the 'Work product of the lawyer' ".[5]

Broadly speaking, the rule is nothing more than an extension of the requirement for a showing of good cause for the production of documents to information of all kinds developed by a lawyer in preparing his case for trial, with the addition (binding upon this Court under the Alltmont decision, supra) that in such cases the courts are, in effect, put to the very difficult task of finding very good cause as distinguished from good cause. The essential problem whenever work product is invoked is to prevent the use of the discovery machinery to

4. An illustration of what I have in mind is State of Maryland, to Use of Peters v. Baltimore & O. R. Co., D.C., 7 F.R.D. 666, 667. That was a grade crossing accident case in which the defendant, in interrogatories, asked the widow plaintiff questions about the facts of the accident, for example, whether her husband was alone at the time and, if not, whether he or someone else was driving his car. The plaintiff answered that she knew nothing about the accident and had not talked to any witnesses and was unable to answer the questions. The Court ruled that the plaintiff's attorney who had obtained the information "was bound to disclose facts relating to the accident in his possession".

5. As an illustration, in Shields v. Sobelman, D.C., 64 F.Supp. 619, (decided before the decision of the Supreme Court in Hickman v. Taylor, supra, but after the decision of the Circuit Court of Appeals in that case) where the defendant attempted to claim a "work product privilege" for photographs of an allegedly defective winch which had been taken under the supervision of the defendant's lawyer who had himself positioned the camera, the Court held that "work product" was not involved and that the photographs should be produced without the necessity of showing any special circumstances.

hinder the orderly and proper administration of justice by impairing the effectiveness of a lawyer's preparation of his client's case and at the same time not to defeat the purposes of discovery by allowing suppression of relevant facts.

### The Defendant's Rule 34 Motion for Production of Documents

#### Section 1(n)

This request, covering all "records relating to the product studies, determinations, and calculations made" by the plaintiff's scientists with respect to alleged infringing products, has given me considerable concern.

■ Allowable scope of discovery: In the ordinary lawsuit discovery should not be allowed where the facts which it is framed to develop are useful and relevant for no purpose other than to enable the moving party to show by cross-examination or otherwise that an expert (presumably, but not certainly, to be called by the opposing party) has inadequate bases for an opinion which he is expected to give. This is one of the things which the parties are trying to get by their Rule 34 motions—possibly the principal thing. So, if this were a simple mechanical patent, I would sustain many of the objections of both parties to the production of the documents asked for under their Rule 34 motions.

However, both parties appear to fully recognize that this case is an unusual one in that the adequacy of the procedures used by experts, or available to them, to determine the chemical properties of a product such as that claimed, comes very close to being an ultimate fact and a major issue in the case. It is impossible for the plaintiff to establish infringement or for the defendant to attack the validity of the patent except by opinion testimony of experts. Take, for example, one property specified in the claim— "containing side chains, at a frequency of less than 1 side chain per 200 carbon atoms in the main chain as determined by infra-red absorption analysis". Fact testimony can describe the process of analysis which a witness used to identify such a property and the visible results of the process but further than that it cannot go. Unless the opinion of an expert supplements and interprets those results, there is simply no evidence before the Court. Looked at from a practical rather than a legalistic point of view, the facts of a case like this are the opinions of experts and the groundwork for those opinions comes within the ambit of a proper search for facts beyond the knowledge of the moving party.

Thus it would seem that the necessities of a case such as this transcend some of the limitations upon discovery which apply in ordinary cases. Unless procedures can be inquired into and records of actual tests produced, neither party can have any idea of what the evidence against it is going to be.

Work product: In view of what has been said about work product, it seems clear to me that the greater part of the documents asked for by the Rule 34 motions of the parties are not work product, or, in other words, the policy of privacy for a lawyer's trial preparation does not apply to them. As to them, the moving party will not be required to do more than show good cause as that term is ordinarily understood, and need not meet any extra burden or show any "special" circumstances.

The staff of experts whose reports, notes, etc., are asked for was at work analyzing and identifying the product of most, if not all, of the companies mentioned in 1(n) and, probably, a number of other products, both before and after the patent issued. The work which they were doing was scientific work entirely unconnected with any legal matter and far beyond the capacity of most lawyers. As a matter of fact, for a lawyer to intermeddle with it would be ridiculous and probably disastrous. It did not become professional legal work so that any work product rule can be invoked in respect of it merely because at some point

the prospect of litigation arose and the scientific workers were ordered to send their reports to the plaintiff's legal department or trial counsel.

Good cause: It is true that in ruling upon objections to interrogatories, D.C., 23 F.R.D. 237, Judge Layton expressed doubt that the defendant would be able to establish the necessary good cause in connection with these documents since the defendant was able to ascertain the properties of its own product as well as the plaintiff. However, I believe that the case has developed to a point where such good cause is emerging. The defendant has satisfied me that the identification of the product patented is a difficult matter, and there may be ground for its contention that not only is it difficult but that different results will be obtained depending upon which of a number of different procedures is used. The defendant is entitled to prove it if it can, and it is further entitled to know which procedures the plaintiff has tried which, of course, provided the basis of the plaintiff's charge that the defendant infringes the patent. Judge Layton in his opinion dealt with the defendant's position on the basis that what was sought was the end results of the tests, in other words, the composition or properties of its product, and, of course, he was entirely correct in stating that the fact that the defendant could obtain that knowledge as well as the plaintiff negatived good cause for that purpose. However, it appears to me that the contest will probably center upon the methods by which the results were obtained, and, while the defendant can test its own product to identify its properties, it has no way, other than discovery, of finding out whether the plaintiff has been able to do so. Under these circumstances, the ground for denying which Judge Layton ground for denying discovery which Judge Layton referred to would not apply.

Relevancy: It is clear that the general underlying purpose of most of the defendant's discovery now before the Court is to develop evidence to support two principal contentions which it proposes to advance at the trial. These are (1) that it is not possible to determine the properties and composition of the defendant's product by any test used by the plaintiff leading to its charge of infringement and (2) that the patent is invalid because it discloses no reliable test or means of determining whether the product claimed really has the properties specified in the claims.

■ These may or may not be valid defenses. However, the defendant is entitled to make them without the necessity of the Court's passing upon the prospect of its ultimately sustaining its position. Obviously, to decide that question now under the guise of determining the relevancy of certain documents would be to decide the entire case. The only question, therefore, upon the point of the relevancy of the various matters sought to be discovered by the defendant is whether they are relevant *to the defendant's contentions*. Love v. Metropolitan Life Ins. Co., D.C., 8 F.R.D. 583.

■ One limitation upon the defendant's right to have the documents produced must be observed, as it will form the basis for denying one or two of the requests. One of the defendant's objects, as has been said, in asking for these documents is to find grounds upon which to impeach the plaintiff's experts. I do not believe that the mere hope that the records might turn up some statements on the part of the scientists which would be inconsistent with some of their conclusions as to infringement would of itself be sufficient to constitute good cause for production.

■ The documents requested by section 1(n) are ordered produced in so far as they refer to the defendant's polyethylene products or the products of its licensees, and the motion is denied as to products of other persons. The defendant is entitled to the same information concerning the products of the li-

censees as to the identification of its own product, since the plaintiff claims that these licenses establish that the defendant induced others to infringe.

The test procedures used on products other than those of the defendant and its licensees are not ordered produced, because they would merely yield information as to what results can be obtained by using various methods of testing as applied to products other than those in controversy. It seems to me that this is merely scientific information of a general nature, and the defendant is adequately equipped to obtain the same information. In a sense, any test ever run by either the plaintiff or the defendant contributes to the body of scientific knowledge. However, there must be some limit to discovery of this nature and I think the limit would be exceeded by ordering the production of tests on products not related to those of either party.

### Section 2

For the reasons stated in the discussion of the request under section 1(n), the documents requested under section 2 of the motion are ordered produced since they are merely a continuation of the request of section 1(n). The order, however, will not extend to "any polymer" but will be limited to linear polyethylenes.

### Section 3

I understand from the brief of the plaintiff opposing this request that its only objection to it is based on the common-law attorney-client privilege. This objection will be dealt with in accordance with the procedure stipulated by the parties. The same disposition is made of sections 6, 9, 11, 12, 16 and 18 of this motion.

### Section 4

The plaintiff has already produced a number of the documents asked for under section 4 of the motion and is willing to produce more. The plaintiff, however, resists producing records of interdepartmental communications and internal decisions made by its officers and agents. I can see nothing to support this part of the request except a hope that the defendant might find something which will help its case. If it could be made to appear to me that there was any substantial foundation for such hope, the question would be different. I realize that "fishing expedition" is no longer a ground of objection to discovery. But, on the other hand, unless the Court requires the moving party to show that there is something more than a mere possibility that relevant evidence exists, the only appropriate order would be one requiring the party to turn over every scrap of paper in its files as well as the contents of its waste baskets.

The defendant argues in support of its motion that the information sought is relevant because the plaintiff has alleged in paragraph 9 of its complaint that it notified the defendant of infringement and that it offered to license it under the patent but that it refused such license. Certainly the mere fact that the plaintiff has made an allegation in its complaint which, so far as I can see, the defendant will not deny does not furnish ground for an allowance of matter otherwise not within the proper scope of discovery.

### Section 5

The records sought here have to do with a license obtained by the plaintiff from one, Karl Ziegler, to use his process for the manufacture of linear polyethylenes. I do not see how this information can have any bearing on the question of commercial success, which is the basis of the defendant's argument for its relevancy. The plaintiff contends that the defendant manufactures the product of its patent (the plaintiff's). There is no contention about method. Therefore, if the plaintiff is right that the defendant is manufacturing the product of the claim, the defendant cannot very well argue that it is not a commercial success. If the plaintiff is mistaken and the defendant's product is not

that of its patent, the question of commercial success may never arise.

### Section 8(c)

The plaintiff has stated in its brief that it is willing to produce certain of the material described in this request but contends that a very large portion of it is not only irrelevant but contains confidential information relating to certain of the plaintiff's activities which are totally unrelated to the patent in suit. It appears from the testimony already taken that the plaintiff's contention is substantially correct. The objection will, therefore, be sustained except so far as the material asked for has to do with polyethylenes.

### Section 10

The documents asked for will be produced. However, this order is limited to those documents which refer to polyethylenes.

### Section 13

The documents requested will be produced. The date of their publication is not a valid ground for restricting their production, particularly since a statement in a publication may refer to a fact known for a long time prior to the date of publication and the information sought may well be relevant to the prior art.

### Section 14

This request is for reports, memoranda and commentaries of the plaintiff's employees relating to a number of articles written by the defendant's scientists, the plaintiff's scientists, and British scientists. As to those of the articles which were considered by the defendant of sufficient significance to be pleaded as prior art, the plaintiff will produce all of the documents requested in the motion. As to the comments on the remaining 17 articles referred to in the request, though it is not impossible that they may furnish some lead to relevant information, I believe the possibility is too remote to compel the plaintiff to make the extensive search that would be required in order to find every comment on them by any of its thousands of employees.

### Section 15

This. The documents requested in section 15 will be produced. They have direct reference to the patent in suit and associated patents and may well lead to the discovery of relevant evidence or may be relevant evidence in themselves, and the effort involved in the production of them is not disproportionate to the advantages of discovery.

### Section 17

Same ruling as section 10.

### The Plaintiff's Rule 34 Motion for Production of Documents

### Section 1A

This request is for bulletins, advertisements, press releases and various publications issued by the defendant or its licensees relating to their accused products. They will be produced in so far as they are in the possession of the defendant. They unquestionably contain information concerning the nature of the accused product and are also relevant as to the defendant's tests to distinguish it from the product of the patent. The plaintiff, of course, does not have these documents and would be put to an inordinate amount of trouble and expense to locate and obtain them, if it could do it at all, and they may well be of great value to it in proving its case and simplifying the trial.

### Sections 1B and 1C

These documents need not be produced. They have to do with notebooks and laboratory records and reports upon which certain publications authored by employees of the defendant were based. They are alleged to, and undoubtedly do, contain experimental information of commercial value which, even though remotely relevant, may not be of great importance in this lawsuit. Section C in particular asks for the note-

books upon which a publication describing a new method of testing was based. This request seems to me to be a request for general scientific information and there can be no good cause for its production even though it may have some slight relevancy.

### Section 1D

■ This request is for documents, without limitation, relating to the filing of the defendant's process patent (Hogan and Banks). The request is denied. The defendant's patent is not in issue and there is no reason to think that all the records relating to the prosecution of the patent application will contain information needed by the plaintiff to prove its case.

### Section 1E

■ This request has to do with records which relate to certain statements in the file of the Hogan and Banks patent. These statements all relate to various characteristics or properties of the polyethylene product resulting from the process claimed. The documents asked for are very likely to afford information concerning the identity of the product produced by the patented process, which is the accused product. They will be produced.

### Section 1F

■ The only objection to this section is that the documents have already been produced. This is not a valid objection in itself. However, a statement in response to an order that they be produced to the effect that they have already been given to the plaintiff will be a compliance.

### Section 1G

■ This request is for documents relating to the visit of the defendant's infra-red expert to the plaintiff's laboratory to attend the demonstration of the plaintiff's infra-red techniques referred to heretofore. One ground for objection is that the documents called for constitute work product. This objection must be overruled. As heretofore stated, the mere fact that certain information comes to a lawyer via employees of his client does not give it any special protection, although under certain circumstances it may be privileged by the common-law attorney-client privilege. It should also be noted that this is precisely the same material which the defendant demanded that the plaintiff produce and which the plaintiff agreed to produce subject only to the reservation stipulated by the parties relating to the common-law privilege. The Court is not going to be too deeply concerned about good cause for production of documents where both parties seek documents of exactly the same nature for the same reasons.

### Section 1H

■ This request is, in effect, for comments by the defendant's employees upon the plaintiff's patent and upon several articles written by the plaintiff's employees. The only possible use that I can see for it at the trial would be in connection with the examination of one or more witnesses and then only if something favorable to the plaintiff should be found. There is nothing before me to lead me to think that such matter exists and the difficulty in searching any large corporation's records for comments concerning an article or a patent would not be justified by the fragile hope that something relevant might turn up.

### Section 1I

■ The defendant's only objections to this part of the motion to produce are (a) that it seeks the production of work product and (b) that it invades the common-law attorney-client privilege. I fail to see how the work product principle could be invoked inasmuch as all the documents requested are dated prior to the issuance of the patent in suit and could not possibly be considered any part of the professional work of a lawyer preparing this case for trial. The attorney-client privilege asserted is subject to the stipulation heretofore mentioned and which will be included in the Court's

order. There is no reason why the Court should consider possible objections to the request, not raised by the defendant. The documents will be produced.

### Section 1J

The request seeks the production of agreements by which the defendant has licensed others under its process patent to manufacture the type of polyethylene charged to infringe the plaintiff's patent. The complaint alleges not only that the defendant infringes but that it has induced others to infringe. The agreements sought are an essential part of the proof of this allegation. Of course, if the defendant admits the fact that licenses to manufacture polyethylenes having the characteristics of "Marlex 50" have been granted by it and specifies the dates of such licenses, disclosure of all the terms of the licenses would be unnecessary and would not be ordered.

### Plaintiff's Interrogatories

Interrogatories 11 and 12 ask for the names of the products manufactured by the defendant and by its licensees, identifying the products referred to as consisting "essentially of solid polyethylene". It is obvious that the plaintiff is entitled to know which products the defendant or its licensees manufacture which may infringe. The defendant objects to these interrogatories because they use the word "essentially". The objection, which is based on the alleged indefiniteness and uncertainty of the term, can be disposed of by a reference to the plaintiff's brief upon the point. The plaintiff defines "essential" as "intended to catch solid polyethylene products that may contain impurities of one kind or another". The interrogatories may be considered as amended by this definition and, so amended, will be answered.

Interrogatory 13 seeks information as to the properties of the products of interrogatories 11 and 12 and how these properties were determined. The objection to this interrogatory is overruled. These properties determine whether or not the products are the products of the patent and go directly to the issue of infringement. It should be noted that the products of interrogatories 11 and 12, to which interrogatory 13 is limited, are products made or sold after the patent issued.

■■■ Interrogatory 18 seeks to find out when the defendant's employees learned of certain documents prepared by the plaintiff's employees and which of the defendant's employees wrote or published commentaries on them. This interrogatory will be answered for the sole reason that the information sought may lead to the discovery of relevant evidence. It must be borne in mind that an interrogatory under Rule 33 cannot be treated upon the same basis as a demand for production under Rule 34, where not only must relevancy be shown but also "good cause".

### Questions Propounded to Witness Boyd

■■■ This is a motion under Rule 37 to compel the witness Boyd to answer certain questions propounded to him on deposition. The objections to questions 1 through 5 seem to me to be without merit. The one most strongly pressed is that of so-called work product. Dr. Boyd's work was of the most technical scientific kind and in no sense of a legal nature. I do not think the answers to these questions would be an invasion of the attorney's privacy in his preparation for trial. The facts sought to be elicited are no more entitled to protection under that principle than were the photographs in the Shields case, supra, see footnote 5. The questions are directed towards ascertaining the reliability of certain tests used to identify the product. It appears that some of these tests were used by Dr. Boyd in attempting to demonstrate to the defendant that its product infringed. The information sought is relevant. On deposition the requirements of Rule 26 apply and not those of Rule 34.

As to question 5, however, a word might be said for the guidance of counsel. The question should be answered, but exploration of that answer should not be extended beyond work on polyethylene and should not be extended into the field of the plaintiff's general development and research work.

Questions 6 and 7 were objected to because of the dates covered. This was intended to and did raise the plaintiff's objection on the ground of work product. I do not think the objection is well taken and the questions should be answered.

### Questions Propounded to Witness Atkins

This is a motion under Rule 37 to compel the witness Atkins to answer a question on deposition. The question is simply whether or not he made tests of the viscosity of the product charged to infringe. This was objected to on the ground that it invaded the attorney's privacy in preparation for trial. That doctrine is equally inapplicable to this question and the same considerations that apply in the Boyd motion require me to order the question answered.

The Court finds as a fact that good cause exists for ordering the production of all documents or disclosure of all matters claimed to be work product which the foregoing opinion states are to be produced. In view of the nature of this case, their production is needed to assist the moving party in preparing its case, may well result in a simplification or elimination of a number of fact issues and are either not obtainable by the moving party or are obtainable only by the expenditure of an unreasonable amount of time and effort. An order may be submitted embodying the Court's rulings upon the various matters of discovery discussed. The order shall include the stipulated procedure as to documents claimed by either party to fall within the common-law attorney-client privilege.