**UNITED AIR LINES, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 2043.**

United States District Court
D. Delaware.

March 24, 1960.

See also 186 F.Supp. 828.

James M. Tunnell, Jr., Andrew B. Kirkpatrick, Jr., and Harvey S. Kronfeld, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Haight, Gardner, Poor & Havens, New York City, of counsel, for plaintiff.

Leonard G. Hagner, U. S. Atty., Ralph F. Keil, Asst. U. S. Atty., Wilmington, Del., John J. Finn and Alice K. Helm, Trial Attys., Dept. of Justice, Washington, D. C., of counsel, for defendant.

CALEB M. WRIGHT, Chief Judge.

The plaintiff has filed a motion to produce under F.R.Civ.P. 34, 28 U.S.C. reports of two Air Force Investigation Boards and the transcript of the proceedings before the respective Boards, together with any exhibits used in the proceedings.

The present motion stems from an action brought by the plaintiff under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) as amended, to recover the sum

of $3,576,698 for property damage and certain expenses allegedly incurred by the plaintiff as the result of an airplane accident.[1] The defendant has filed a counterclaim in the amount of $6,191,-509 for alleged damages occasioned by the accident.

On April 21, 1958, in the vicinity of Las Vegas, Nevada, an airplane owned and operated by the plaintiff and a jet airplane owned and operated by the United States collided in midair resulting in the complete destruction of both aircraft and the death of the occupants of both planes.

Subsequent to the accident three separate official investigations were conducted. One was conducted by the Civil Aeronautics Board (C.A.B.), another by a Board of Officers of the United States Air Force (U.S.A.F.), the record of which is referred to as the Collateral Board Report, and the third also by the U.S.A.F. which is designated the Aircraft Accident Investigation. It is the two latter proceedings with which we are primarily concerned.

The Government at this stage opposes production on the grounds that the plaintiff has not shown "good cause". It contends the C.A.B. report, copy of which is in plaintiff's possession, contains the testimony and/or statements of 49 witnesses who, with the exception of three persons, are all of the witnesses who appeared before either the Aircraft Accident Investigation Board or before the Collateral Board. It is not clear whether all of the exhibits presented in the two Air Force investigations are a part of the C.A.B. report or not. The Government also urges that the Aircraft Accident Investigation is concerned solely with flight safety and that our national security is dependent upon this report remaining inaccessible to the plaintiff. Since the Government has not formally invoked the claim of privilege, I deem any further reference to this phase of the matter at this time irrelevant.

The plaintiff contends the documents are essential to it for the following reasons:

(1) The reports deal with the circumstances surrounding the collision and refer to important evidence and indicate other possible sources of evidence;

(2) the witnesses were interrogated shortly after the accident and their immediate impression is much better than it now would be many months after the accident;

(3) the defendant's plane was in its exclusive control and possession;

(4) the two investigations were conducted and controlled by the United States Air Force and plaintiff did not, and was never given the opportunity to participate in any way in either of said investigations, and knows of no way to obtain knowledge of the contents of documents presented to the Investigating Boards other than by their production;

(5) there were no survivors, so that necessarily liability must be determined by reconstruction and evaluation of the many facts leading up to the time of the collision and the reference to be drawn by experts from the determined facts;

(6) the need by the plaintiff to properly examine witnesses at trial; and

(7) the inconvenience and delay in taking depositions of witnesses.

What constitutes a sufficient showing of "good cause" depends in large part upon the circumstances of each case. This court has taken the position that if the witnesses themselves are available to the party and can be interrogated or examined, there will ordinarily be no occasion for ordering the production of their statements. See Reeves v. Pennsylvania R. Co., D.C.D.Del., 1949, 8 F.R.D. 616, 619. But I don't think this is justification for a rigid rule that the party seeking production must always show that he has been unable to obtain his own statements from the witnesses.[2]

---

1. By amendment to the complaint dated March 23, 1960, plaintiff now seeks $3,-941,452.

2. "It is clear from the carefully worded order amending the opinion of the Court of Appeals in Alltmont v. United States,

There are upwards of 49 witnesses many of whom have testified before three Investigating Boards. These persons are scattered over the United States and probably some of them are outside the territorial limits of the United States. The majority of the witnesses appearing before the Collateral Board were employees of the Air Force or Air Force personnel as is also the case of the witnesses before the Aircraft Accident Investigation Board. No one survived the crash; the planes involved in the collision were demolished and burned. To reconstruct what happened and how this unfortunate accident occurred or the reasons therefor, will require the most thorough and careful marshaling of all available facts. Some minor deviation as to what a witness might have actually observed or what he did, or did not do, at a particular time before the collision may be crucial. A thorough knowledge of what witnesses may have said on other occasions is more important in this case than in the more usual one.

The Boards were comprised of Air Force officers and other Air Force personnel. The Investigative Boards are convened under Air Force regulations as a part of its normal operating procedure when there is an accident involving one of its aircraft.

The reasoning of Senior Judge Kirkpatrick in Reynolds v. United States, set forth below, is persuasive, and in the absence of a formal claim of privilege, peculiarly appropriate: [3]

"Preliminarily, it may be said that this is not the case of statements obtained by an attorney or of statements obtained by others under the attorney's direction or for the purpose of aiding the attorney in preparing for trial * * *.

"* * * The three witnesses whose names have been supplied are Army Air Force personnel stationed at three different Army air bases in Florida. The burden, expense and inconvenience to the plaintiffs involved in taking their depositions are factors for the Court to consider in exercising its discretion, * * *.

"However, assuming that it is possible to take the depositions of the witnesses in question without undue burden upon the plaintiffs, the fact remains that, in view of the nature of this particular case, disclosure of the contents of their written statements is necessary to enable the plaintiffs to properly prepare their cases for trial, and furnishes good cause for production.

"The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. When the airplane crashed, it was wrecked and much of the evidence of what occurred was destroyed. Only persons with long experience in investigating airplane disasters could hope to get at the real cause of the accident under such circumstances. The Air Force appointed a board of investigators immediately after the accident and examined the surviving witnesses while their recollections were fresh. With their statements

---

3 Cir., 177 F.2d 971, 979, that the Court wanted to make sure that what was said in the original opinion would not be seized upon as support for the proposition that if a party seeking discovery gets the name and address of a witness he cannot, under any circumstances, get a statement which the witness has given. And the Court also carefully avoided ruling that even when the witnesses are accessible and can be examined without undue hardship and delay their statements are necessarily immune. The Court merely said that in such a case 'it is quite possible' that the party seeking production of the statements may not be able to show good cause * * *." Reynolds v. United States, D.C.E.D.Pa. 1950, 10 F.R.D. 468, 470, reversed on other grounds, United States v. Reynolds, 1953, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727.

3. Reynolds v. United States, D.C.E.D.Pa. 1950, 10 F.R.D. 468, 470-471, reversed on other grounds, United States v. Reynolds, 1953, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727.

as a starting point the board was able to make an extensive investigation of the accident. These statements and the report of the board's investigation undoubtedly contain facts, information and clues which it might be extremely difficult, if not impossible, for the plaintiffs with their lack of technical resources to obtain merely by taking the depositions of the survivors.

"I am not suggesting that the witnesses on deposition would not answer the questions asked them truthfully, but, in a case like this, in which seemingly trivial things may, to the expert, furnish important clues as to the cause of the accident, the plaintiffs must have accurate and precise firsthand information as to every relevant fact, if they are to conduct their examination of witnesses properly and to get at the truth in preparing for trial. This only the statements can give them. I would not go so far as to say that the witnesses would necessarily be hostile. However, they are employees of the defendant, in military service and subject to military authority and it is not an unfair assumption that they will not be encouraged to disclose, voluntarily, any information which might fix responsibility upon the Air Force.

"The answers to the interrogatories are far short of the full and complete disclosure of facts which the spirit of the rules requires. True, the defendant has produced a mass of documents but these refer to the past performance of the plane and service records of the pilots and are essentially negative * * *.

"Beside all this, the accident happened more than 18 months ago and what the crew would remember now might well differ in important matters from what they told their officers when the event was fresh in their minds. Even in simple accident cases requiring no technical knowledge to prepare for trial, the fact that a long period of time has elapsed between the accident and the taking of the deposition of a witness gives a certain unique value to a statement given by him immediately after the accident when the whole thing was fresh—particularly when given to an employer before any damage suit involving negligence has begun.

"For these reasons, I conclude that good cause appears for the production of all documents which are subject to the motion."

I sympathize with the Government's interest in flight safety and its efforts to reduce the incidents of aircraft accidents. I am, however, somewhat disturbed by the following statement appearing in the affidavit of the Inspector General, U.S. A.F.:

"That the strength of the United States Air Force, upon which our national security is greatly dependent, is seriously affected by the number of major aircraft accidents which occur. Our successful flight safety program has contributed greatly to the continuously decreasing rate of such accidents. The effectiveness of this program depends to a large extent on getting full information on the cause of each aircraft accident. Much of the information received from witnesses in the course of an Aircraft Accident Investigation is received because witnesses are assured that their testimony will be used solely for the purposes of flight safety. They are, in effect, granted immunity;

"That, lacking authority to subpoena witnesses, accident investigators must rely on assurances that testimony will not be used against anyone or for any purpose other than flight safety in order to get free and frank disclosure of the facts of an accident. In some cases these disclosures are selfincriminating. Involved also is informant type information which must be protected;

"That if investigators knew that their reports were subject to use in litigation, they would be less willing to assess blame, especially where allegations of negligence are involved. As a result accident reports would very likely be 'watered down.' Technical representatives of the aviation industry currently assisting in aircraft accident investigations could not be expected to find their companies at fault if their reports could be used in actions against their companies;"

 Are not the courts also entitled to full and frank disclosure? Judicial endorsement of the policy advocated by the Inspector General would be completely intolerable, and would not be in accord with the proper and efficient administration of justice. Federal Courts cannot be relegated to a second class status. To assess blame and redress wrongs, judicial tribunals must insist upon full disclosure, for this is the best method of ascertaining truth. Why the Air Force is entitled to more honesty than a court of law is completely outside the ken of this judge.

The Government's offer (1) to make available the witnesses appearing before the various boards for examination by the plaintiff; (2) to authorize these witnesses to testify regarding all matters pertaining to the cause of the accident; and (3) to authorize these witnesses to refresh their memories "by reference to any statements made by them before Aircraft Accident Investigating Boards or Investigating Officers, as well as other pertinent and material records, that are in the possession of the United States Air Force," [4] does not accord plaintiff that which it is entitled under the circumstances of this case.

Permitting these persons to refresh their recollections by statements previously made, and at the same time to deny plaintiff access to these records, would allow the witness to control that which he desires to disclose. The plaintiff would be entirely without adequate means to probe the testimony. It seems incongruous for the Government on the one hand to state it will permit the witness to refresh his recollection by resort to prior recorded statements, and at the same time, to deny their disclosure to the plaintiff.

In conclusion, I am of the opinion, that the totality of the circumstances warrants the finding that plaintiff has shouldered its burden of establishing "good cause", pursuant to the requirements of F.R.Civ.P. 34 and that the plaintiff should be permitted to examine and copy the statements of the witnesses and exhibits produced before the Aircraft Accident Investigation and Collateral Boards. The examination shall be done with a view toward preventing undue exposure of these records and upon an appropriate application, the court will establish any restrictions that the particular circumstances necessitate.

Submit order.

---

4. Affidavit of the Judge Advocate General, United States Air Force.