**UNITED AIR LINES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2043.**

United States District Court
D. Delaware.
Nov. 4, 1960.

**214**

James M. Tunnell, Jr., Harvey S. Kronfeld and Richard H. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., David L. Corbin, of Haight, Gardner, Poor & Havens, New York City, and George Foy, United Air Lines Legal Dept., Chicago, Ill., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., Max F. Deutz, Chief Asst. U. S. Atty., Southern Dist. of California, Los Angeles, Cal., Max L. Kane and Milan M. Dostal, Attys., Dept. of Justice, Washington, D. C., for defendant.

CALEB M. WRIGHT, Chief Judge.

This is a ruling upon plaintiff's motion under F.R.Civ.P. 37(b) (2), 28 U.S.C., for an order compelling defendant to comply with an earlier mandate of this Court requiring the production of certain documents. Alternatively, plaintiff prays that an order be entered compelling the authors of the disputed documents to answer certain questions in deposition proceedings. These prayers arise from an action commenced by plaintiff under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as amended, to recover damages allegedly the result of a midair collision between airplanes owned and operated by the two parties. Defendant has filed a counterclaim for damages.

Soon after the collision, experts from United Air Lines (UAL) and the United States Air Force (USAF) investigated the scene of the wreckage and observed the condition and position of the various parts of the two planes as they had fallen to the ground. The experts then attempted to reconstruct the planes so as to determine the causes of this accident. Three separate official investigations were held. The first was sponsored by the Civil Aeronautics Board (CAB). Among the members of the board dealing with structures was an expert from UAL who had investigated the wreckage and a Mr. E. R. Preston, employed by the USAF, who had also been at the scene and is an author of one of the disputed documents. The second was held by the USAF and may be called the Collateral Board. No dispute exists as to the documents or testimony involved in these two proceedings. The third investigation was made by the USAF's Aircraft Accident Investigation Board (AAIB), the records of which contain the documents desired by UAL.

In April, 1959, UAL moved under F.R. Civ.P. 34 for the production of the reports of the Collateral Board and the AAIB, together with the transcript of proceedings before them and any exhibits used therein. UAL argued that the lack of witnesses to the collision and the aura of mystery as to its causes sufficed to meet the good cause requirement of Rule 34. The government vigorously contended that the documents should not be dis-

closed on the grounds that the work of these boards is instrumental to the US AF's flight safety program and that, lacking subpoena power, the boards are wholly dependent upon witnesses voluntarily offering their versions of the facts and their views as to the causes of accidents. But encouragement of this practice, it was asserted, depends upon the purposes for which the proceedings are used, for if a witness' testimony may subsequently become part of the public record or be freely employed against him, his employer, or his superior officer, the boards may encounter serious difficulties in securing the necessary voluntary appearances and frank disclosures. Were this to happen, the flight safety program would be severely hampered. The Government, however, did not file a formal claim of privilege at that time.

This Court held that under the circumstances this policy of the USAF did not justify a blanket refusal to disclose.[1] The Court noted in part,

"No one survived the crash; the planes involved in the collision were demolished and burned. To reconstruct what happened and how this unfortunate accident occurred or the reasons therefor, will require the most thorough and careful marshaling of all available facts. Some minor deviation as to what a witness might have actually observed or what he did, or did not do, at a particular time before the collision may be crucial. A thorough knowledge of what witnesses may have said on other occasions is more important in this case than in the more usual one."[2]

The Court then permitted examination of the statements of witnesses and exhibits produced before the Collateral Board and the AAIB but not the reports of the boards themselves. The Court added, "The examination shall be done with a view toward preventing undue exposure of these records and upon an appropriate application, the Court will establish any restrictions that the particular circumstances necessitate."[3]

The government produced all of the proceedings before the Collateral Board but only a portion of those before the AAIB. The documents withheld, according to the USAF, consist only of opinions, conclusions, and recommendations of experts and board members and do not contain factual matter observed by witnesses. The government has asserted a formal claim of privilege as to these documents founded upon a finding by the Acting Secretary of the Air Force that disclosure would be "contrary to the public interest." Plaintiff seeks to examine them all but is anxious to obtain two in particular.[4] The first is by a Captain George E. Dreier, the second by E. R. Preston, a civilian employee of the USAF. Both apparently deal with structure analysis. Frustrated by defendant's refusal to produce, plaintiff then sought to take the depositions of these two experts. The witnesses, however, although they were willing to testify as to facts observed by them, refused to answer questions requiring them to state their opinions and conclusions. Plaintiff now seeks an order compelling defendant to produce the documents or, alternatively, one requiring the witnesses to answer the questions in deposition proceedings.

The disputed documents are within the literal scope of the Court's order en-

---

1. United Air Lines, Inc. v. United States, D.C.D.Del.1960, 186 F.Supp. 824.

2. Id., at page 826.

3. Id., at page 828.

4. Because the briefs and oral arguments have focused upon these two reports and have dealt only generally with the others, the Court will assume that the two are typical and that there are no special circumstances surrounding the others. The holding of this opinion is, therefore, applicable to all the disputed documents.

tered pursuant to the earlier opinion.[5] Nevertheless, the Court does not believe that the issue of good cause as to these documents was resolved at that time. None of the papers or arguments then before the Court indicated that the transcript of the proceedings before the AA IB or the exhibits produced therein contained matter representing the opinions or conclusions of experts as to the causes of the collision. The issue, as formulated by the parties and resolved by this Court, was whether, under the circumstances of the case, the above-described USAF policy justified a blanket refusal to produce the records of the proceedings before the respective boards. Indeed, the last sentence of the Court's opinion clearly indicates that the general ruling made at that time was intended to be flexible and might be varied to meet particular circumstances as they arose.[6]

Defendant asserts that the disputed documents are privileged because the Acting Secretary of the Air Force has found that their disclosure would be "contrary to the public interest." Plaintiff vigorously denies the existence of such a "housekeeping" privilege where military or state secrets are not at stake. Cf. United States v. Reynolds, 1953, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727. This issue, fraught with constitutional overtones, need not be resolved at this time, however, for the Court finds that the record, as now constituted, does not justify disclosure.

■ Because plaintiff seeks disclosure through alternative means, i. e., by deposition or through examination of documents within defendant's control, which are in turn founded on rules having substantial disparities in language and approach, it must be determined initially whether different standards are to be applied in determining the scope of permissible examination under each. Rule 26 allows parties to proceed to take depositions without leave of court, while 30(b) establishes a protective function to be exercised by the court only after the examination touches upon disputed matter. Rule 34, however, allows inspection of documents within a party's control only after a court order has been secured. This disparity in method arguably may indicate that the requirements imposed by 34 are stricter than those under 26 and 30(b). Under this interpretation, a party barred from examination of a document by 34 might still be allowed to inquire as to its contents under 26. Rule 34, however, specifically incorporates the scope of examination allowed by 26(b) and is "subject to the provisions of Rule 30(b)." This language clearly demonstrates that although the method by which the parties must proceed under each rule differs, there is no disparity between 26 and 34 in the legal standards which must be applied when a question as to the scope of permissible examination arises in a particular case. This accords with common sense, for 26 should not become a means to circumvent 34, see E. I. Du Pont De Nemours & Co. v. Phillips Petroleum Co., D.C.D.Del.1959, 23 F.R.D. 237, and the requirements of 34 should not be so strict as to force a party to use only the unreliable device of oral testimony to discover what is accurately set out on paper. What is said henceforth in reference to documents should, therefore, be considered applicable to examination upon deposition also.

■ Because there is no disparity in legal standards between Rules 26 and 34, there is also no formal burden of persuasion imposed on either party. Both 30(b) and 34 refer to the loose term

---

5. They apparently were treated as exhibits at the AAIB hearing and are, therefore, encompassed by 1(b) of the Court's order compelling production of "any exhibits used in such proceedings."

6. See note 3, supra, and accompanying text.

"good cause" as the governing principle, although in the former, the party desiring to withhold must make the showing, while in the latter, the "burden" falls upon the party seeking discovery. This "burden", however, is not a burden of persuasion but simply governs the order in which each party must present his case.[7] This is evident from the nature of "good cause" itself, for although the rules establish it as a standard, it has no frame of reference. The Court's decision, therefore, ultimately is no more than a comparative evaluation of competing claims of need and prejudice. But to inject notions of burden of persuasion into an analysis of such a subjective nature is to create a disparity in legal standards between 26 and 34, a result contrary to the language and philosophy of the discovery rules.

Basically, plaintiff relies upon the following to support its showing of need:

(a) The documents are relevant for they contain opinions and conclusions of experts, arrived at after careful and first-hand investigation, as to the causes of the collision which gave rise to this suit.

(b) They may contain useful admissions.

(c) The documents may be useful for purposes of cross-examination or impeachment of witnesses or of clarifying the testimony of other witnesses.

(d) Although the documents are said to contain only opinions and conclusions, disclosure may lead to unknown facts which will become evident once the conclusion is divulged. As stated in the earlier opinion of the Court, the circumstances of this case make discovery of such factual matter of the utmost importance, and questions as to the facts upon which experts base their opinions are mere stabs in the dark when put forth without knowledge of ultimate conclusions.

(e) There is no other way to obtain the desired information.

Defendant, on the other hand, again relies on the policy of the USAF to restrict use of these reports solely to flight safety purposes in order to encourage accident investigators to testify fully and to assess blame freely. It also points out that the government attorneys do not have access to these documents in preparing their case and that a representative of UAL was present at the AAIB proceedings and heard at least one of these reports read aloud. Finally, defendant contends that, in the absence of special circumstances, expert opinions need not be divulged in discovery proceedings.

■ Discovery is not automatically precluded because the sought-after material contains expert opinions or conclusions. Zenith Radio Corp. v. Radio Corporation of America, D.C.D.Del.1954, 121 F.Supp. 792. Nevertheless, some courts have been reluctant to allow inquiry which goes beyond matters of objective fact. See e. g., Walsh v. Reynolds Metals Co., D.C.D.N.J.1954, 15 F. R.D. 376. Many reasons have been given to justify this reluctance. Chief among these is the argument that if one party hires and pays an expert, it would be unfair to allow his adversary to pry into, and take advantage of, the expert's work. More basic, perhaps, is the notion that the discovery rules are intended to aid preparation for trial by narrowing and clarifying issues and providing flexible means to ascertain basic facts. Hickman v. Taylor, 1947, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451. Discovery of opinions or conclusions, however, furthers these goals in only a tangential manner, for while a witness to a physical occurrence is relatively unique, and,

---

**7.** For a discussion of the distinction between a burden of persuasion and a burden of going forward with evidence, see McCormick on Evidence, §§ 306–7 (1954).

therefore, relatively indispensable, opinions are obtainable from many sources. This leads to the notion that since the party seeking discovery can obtain opinions without difficulty elsewhere, there is usually little need for him to seek them from experts associated with his adversary. Moreover, since the problem often arises after an attorney has requested the expert to make certain tests in preparation for litigation, Hickman v. Taylor, supra, may pose a barrier to discovery. As a result, a line of cases has developed denying discovery when the sought-after matter consists of expert opinions or conclusions. See e. g., Lewis v. United Air Lines Transport Corp., D. C.W.D.Pa.1940, 32 F.Supp. 21; E. I. Du Pont De Nemours & Co. v. Phillips Petroleum Co., D.C.D.Del.1959, 23 F.R. D. 237; Dipson Theatres, Inc. v. Buffalo Theatres, Inc., D.C.W.D.N.Y.1948, 8 F.R. D. 313. Another line of cases, however, has allowed such inquiry where a special need has been demonstrated. In E. I. Du Pont De Nemours & Co. v. Phillips Petroleum Co., D.C.D.Del.1959, 24 F.R.D. 416, discovery was allowed after a showing was made to the effect that identification of the patented product was exceedingly difficult and results varied according to which of several tests was employed. The Court held that the defendant was entitled to know what procedures the plaintiff used to provide the basis of its infringement charge and noted in passing on this question that discovery would not be allowed if the end results of the tests were the only things sought. In Moran v. Pittsburgh-Des Moines Steel Co., D.C.W.D.Pa.1947, 6 F.R.D. 594, examination was allowed where the expert was not a man employed solely to express an opinion at trial but was the individual who had final judgment as to the construction of a liquified gas tank which had exploded.

The present factual situation does not fall squarely within either line of cases.

Preston and Dreier made investigations and reached conclusions in the course of their work on the USAF flight safety program and not in contemplation of litigation. Moreover, their opinions may be somewhat unique in that they are based upon personal investigation of the actual wreckage, not upon assumed facts gleaned from the testimony of others who were at the scene. Nevertheless, the showing of need here is only minimal. There has already been extensive discovery by UAL, and Preston and Dreier have offered to present all the facts upon which their opinions were based. To be sure, some fact may be overlooked if their ultimate conclusions are not disclosed, but UAL has shown this to be only a bare possibility, not a probability. Furthermore, although personal observation of the wreckage by Preston and Dreier is an important factor and worthy of much consideration, its significance is greatly diminished by the fact that UAL had an expert on the scene before Preston arrived. UAL's expert had, therefore, at least an equal opportunity to view the wreckage and to formulate accurate opinions, and there is nothing in the record to indicate that UAL cannot get the necessary factual information from this man. There has been no showing that Preston's or Dreier's opinions are in any way extraordinary, outside of the fact that they are based upon personal observation of the wreckage. Yet UAL may obtain such an opinion from its own man. Two other factors should be noted. First, a representative from UAL heard at least Dreier's report read aloud at the AAIB hearing, and, second, UAL's expert served on the CAB board with Preston, jointly signing a conclusionary report with him. In spite of this, UAL's showing of need is couched in generalities and demonstrates no more than bare relevancy.[8] Nor is there a showing of any

8. Plaintiff's other contentions are without merit. There has not been a sat-

isfactory showing as to how these documents might contain admissions by the

other form of prejudice, for the disputed documents have been denied to the government attorneys as well as to UAL.

■■ In the absence of countervailing factors, UAL's showing, minimal though it is, might be enough to compel disclosure. But here the government, through the USAF, has set forth a policy, not unreasonable on its face, which mitigates in favor of secrecy. This Court has already held quite clearly that, in the face of a greater showing of need and in the absence of a privileged status, this policy cannot serve as a shield. Nevertheless, the judiciary should not ignore policies which are established by the Executive Branch of the Federal Government and are reasonable on their face by compelling disclosure upon a minimal showing, as here, of general relevancy and no more.[9]

The Court thinks it appropriate to state clearly what is not being decided in this opinion. No conclusion has been reached as to the scope of permissible examination if UAL should demonstrate that these experts are unique, that there was special information available to them, or that there are other factors creating a need for disclosure greater than has heretofore been shown. This opinion also does not reach the question of whether these documents should be made available to UAL in the event that defendant ultimately decides to call ei-

ther Preston or Dreier as witnesses at trial. From the foregoing, it should be clear that the issue as to whether a privileged status attaches to documents after a finding by an appropriate executive officer that their disclosure would be "contrary to the public interest" has not been decided. All that has been conclusively determined is that on the basis of the record now before the Court, plaintiff's motions are denied.

Submit order.

---

defendant which UAL could use at trial. Usefulness for purposes of cross-examination or impeachment would result only if the documents brought new facts to light, and this possibility is disposed of in the body of the opinion. To be sure, they might be employed to cross-examine and/or impeach Preston or Dreier should either testify at trial, but this raises issues which need not be determined until it appears with certainty that they are going to be called.

9. It is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases. Hickman v. Taylor, supra; United States v. Procter & Gamble Co., 1958, 356 U.S. 677, 78 S.Ct. 983, 2 L. Ed.2d 1077.

This holding is not inconsistent with the language of the Court's prior opinion compelling disclosure of all factual testimony before the Collateral Board and the AAIB. It was stated there, "Judicial endorsement of the policy advocated by the Inspector General would be completely intolerable * * *." United Air Lines, Inc. v. United States, D.C.D.Del.1960, 186 F.Supp. 824, 828. These remarks, however, were directed not so much to the policy itself as they were to the USAF's attempt to employ it as a total barrier to all discovery of documents accumulated through the official investigations. The Court continues to believe that in the circumstances created by this tragic accident over-zealous concealment of material facts by the government is "intolerable".