**In the Matter of the Subpoena of Wendell KEGG.**

**Misc. No. 87–42.**

United States District Court, N.D. Ohio, E.D.

Aug. 13, 1987.

George Rooney, Jr., Roetzel & Andress, Akron, Ohio, for plaintiff.

James Bruce McMath, McMath Law Firm, Little Rock, Ark., for defendant.

## ORDER

DOWD, District Judge.

Before the Court is a motion for protective order. The movant, Wendell Kegg, seeks payment of expert witness fees from a plaintiff who deposed him in a products liability tire failure case pending in the district court for the Eastern District of Arkansas, *First Commercial Bank of Little Rock, Guardian of the estate of Lloyd Wheat, Sr., an incompetent v. The General Tire & Rubber Company, et al.,* case no. PB–C–83–291.[1] As the subject deposition took place in the Northern District of Ohio, the dispute is before this Court pursuant to the provisions of Fed.R.Civ.P. 26(c), which states in relevant part as follows:

> Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending *or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken* may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... (Emphasis added).

For the reasons that follow, the Court concludes that Wendell Kegg is not entitled to recover expert witness fees from the plaintiff. Accordingly, the Court denies the motion.

## BACKGROUND

The facts are not in dispute and can be easily summarized. When the plaintiff filed the above-mentioned suit, Wendell Kegg was employed by the defendant General Tire, now known as GenCorp., as staff engineer of corporate quality assurance. In that capacity, and in the ordinary course of his employment, Mr. Kegg undertook to examine, analyze, and render his written opinion concerning the allegedly defective tire and wheel involved in the plaintiff's accident. Mr. Kegg's written opinion, rendered on March 12, 1985 via intercompany memorandum to General Tire's law department, concluded as follows:

---

**1.** That portion of the motion requesting the Court to quash the deposition subpoena for Mr. Kegg has now become moot. The deposition went forward as scheduled on May 4, 1987, without prejudice to Mr. Kegg's right to seek compensation.

We could find no manufacturing or material faults or deficiencies in the tire. *See* attachment to reply to motion for protective order (docket # 2).

While Mr. Kegg was still employed by General Tire, his deposition was several times scheduled by the plaintiff but then cancelled for reasons not alleged to be the fault of either party or of Mr. Kegg himself. Mr. Kegg subsequently retired from his employment on April 1, 1987. In connection with the present motion, he has attested as follows:

> I am a former employee of GenCorp. Inc., formerly known as The General Tire & Rubber Company, and am presently an independent consultant, in which capacity I am retained to provide consulting services at the rate of $80.00 per hour. Specifically, I am retained to give expert testimony on behalf of GenCorp. Inc. in [the subject] lawsuit.... *See* Affidavit of Wendell Kegg, attached to motion for protective order (docket # 1).

Pursuant to a deposition subpoena duces tecum, Mr. Kegg's deposition was taken by the plaintiff on May 4, 1987, a little more than one month after Mr. Kegg's effective retirement date.

### THE COURT'S CONCLUSIONS

Since the plaintiff did not conduct the deposition of Mr. Kegg until after his retirement from GenCorp., the claim is advanced that the plaintiff should compensate Mr. Kegg as an "expert" under the provisions of Fed.R.Civ.P. 26(b)(4)(C)(i), which states:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule....

The Court disagrees with Mr. Kegg's position, for the Court concludes that the discovery rules do not contemplate that a person in Mr. Kegg's rather unique position is an "expert."

There appears to be no reported case directly on point. However, the Court's conclusion is drawn from analogous case law discussing discovery rules relative to expert witnesses. The Court has found extremely helpful the reasoning of Judge Warriner in *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 406 (E.D.Va.1975). At issue there, among other things, was whether the plaintiff could compel production of certain documents which were prepared by the defendant's regular employees but which the defendant characterized as the work of "experts." Following an exhaustive analysis of Rule 26(b), its accompanying advisory committee notes, and Black's Law Dictionary definitions of the word expert, the Court ordered the production of the documents at issue. The Court concluded that the "in house expert" was intended to be treated as an ordinary witness for discovery purposes. To reach this result, the Court employed the following reasoning:

> Common to the several definitions [of "expert"] ... is the trait of impartiality, which constitutes a distinguishing characteristic of an expert. One aspect given by Black is "one who can see all sides of a subject." Another aspect is, "persons selected by the Court or parties in a cause, on account of their knowledge and skill...." It is evident from the definitions that an expert is expected to owe his allegiance to his calling and not to the party employing him. In order to be an expert one must be in a position to testify as an expert and not as a partisan. *Id.* at 406.

From this the court concluded as follows:

> [T]hough one be an expert, if his contact with the case is not in his capacity as an impartial observer, but is instead as one going about his duties as a loyal employee, then he "should be treated as an ordinary witness." *Id.* at 407.

This Court finds it of particular interest that the court in the *Virginia Electric* case drew further support for its conclusion from an analysis of Rule 26's expert witness fees provisions, the very provisions

applicable to the present dispute. The court in the *Virginia-Electric* case stated:

> Both [Rule 26 and the Committee Notes] refer to protective orders requiring an opposing party to pay the "fees and expenses" when "further discovery" is permitted. The Notes interpret this language as permitting a requirement to "compensate *the expert* for his time" and to "compensate *the party* ... for past expenses ... incurred...." Thus, it is reasonable to infer that a master-servant relationship between a party and his expert was not contemplated within the ambit of Subdivision 26(b)(4). *Id.* at 407.

Quite recently, the rationale of the *Virginia Electric* court was adopted by Magistrate Piester in *Kansas-Nebraska Natural Gas Company v. Marathon Oil Company,* 109 F.R.D. 12 (D.Neb.1984), to support his ruling that the defendant's in-house experts were not protected from deposition discovery by the provisions of Rule 26(b)(4)(B).

The Court is aware that Mr. Kegg was not actually deposed until after retirement from his regular employment at GenCorp. However, all his underlying work was accomplished and his written opinion rendered before his retirement and during the course of his regular employment. The Court is of the view that Mr. Kegg cannot be considered the type of impartial observer which Rule 26(b)(4)(C)(i) contemplates as an "expert" entitled to fees for time spent in deposition. Accordingly, the Court denies Mr. Wendell Kegg's motion for protective order.

IT IS SO ORDERED.