344

U.S. ENERGY CORP., a Wyoming corporation, and Crested Corp., a Colorado corporation, d.b.a. USE/CC, a joint venture, Plaintiffs,

v.

NUKEM, INC., a New York corporation and Cycle Resource Investment Corporation, a Delaware corporation, Defendants.

Civ. No. 91–B–1153.

United States District Court,
D. Colorado.

May 5, 1995.

William R. Fishman, Denver, CO, Kenneth A.B. Roberts, Jr., Denver, CO, for U.S. Energy Corp.

Frances A. Koncilja, Robert H. Foster, Denver, CO, Harley W. Shaver, Bruce W. Dewald, Denver, CO, for NUKEM, Inc.

## ORDER

BABCOCK, District Judge.

This case is before me on plaintiffs' objections to the March 31, 1995 order of the magistrate judge and defendants' response to

those objections. Having reviewed the objections, in light of the response, I conclude that the magistrate judge's order is neither clearly erroneous nor contrary to law. Accordingly,

IT IS ORDERED that the objections are denied.

## ORDER OF UNITED STATES MAGISTRATE JUDGE

ABRAM, Magistrate Judge.

This matter comes before the Court upon Plaintiffs' Motion to Compel Payment of Expert Witness Fees and to Enforce Compliance with September 16, 1994, Order. Oral argument was heard regarding this Motion on February 22, 1995, at which time the Motion was taken under advisement. After reviewing the pleadings, together with the oral arguments, Magistrate Judge D.E. Abram hereby makes the following order.

### I. Expert Fees

The parties in this matter agreed in writing, prior to any depositions, that experts would be paid "their normal hourly fee" for time spent in depositions. Plaintiffs state that they furnished Defendants with the fee schedule for their experts prior to the taking of depositions. Defendants counter that this fee schedule was provided at the eleventh hour, and the rates being charged by the Plaintiffs' experts are outrageous.

The following are the fees being charged by the Plaintiffs' experts, and the amounts Defendants have stated they are willing to pay in their correspondence with the Plaintiffs:

| Expert Witness: | Asking: | Offer from Defendants: |
| --- | --- | --- |
| Donald C. Anderson | $516.67 (2 hr, 35 min * $200 per hour) | Not addressed in letter |
| Robert Scott Lorimer | $2,100.00 (10.5 hrs * $200/hr) | Pro rata share of his annual $96,000 salary = $484.58. ($46.15/hr * 10.5 hours) |
| William Callison | $3,450.00 ($300/hr * 11.5 hrs) | $1,750.00 ($175/hr * 10 hrs) |
| Ron Witzell | Not addressed—deposition not yet taken. | Not addressed—deposition not yet taken. |

The main points of contention between the parties are the fees to be paid for the expert testimony of Robert Scott Lorimer and William Callison.

#### a. William Callison

The Defendants' argument with Mr. Callison's rates is that he charges a bifurcated fee, the upper end of which is excessive: $170 per hour for support services and $300 per hour for depositions and trial. Plaintiffs argue that this fee and its structure are entirely appropriate, noting that Defendants' expert charges a "flat" rate of $200 per hour for his services. Plaintiffs also note that for Defendants' expert, Professor Ribstein, this amount represents almost pure profit, as he has little to no overhead. However, they argue that Mr. Callison, a practicing attorney with a large law firm, has to account for support staff and administrative overhead.

Thus, he charges a higher fee. Further, Plaintiffs state that Mr. Callison's bifurcated fee schedule reflects the fact that depositions are adversarial in nature, and the increased stress results in a higher charge for the time spent in deposition than in the time spent in preparation.

Although there is a paucity of decisions in the area of what constitutes a "reasonable" fee for an expert, those cases which have addressed the issue have set forth seven factors to be considered in determining whether or not a fee is reasonable: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the

party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26. *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 495 (S.D.Iowa 1992); *see also Hose v. Chicago and North Western Transp. Co.,* 154 F.R.D. 222 (S.D.Iowa 1994); *Goldwater v. Postmaster General of the United States* 136 F.R.D. 337 (D.Conn.1991).

The main distinction between the case at bar and those cases utilizing the seven factor test is that those cases were attempting to interpret Rule 26's requirement of "reasonable" fees, whereas this case is an attempt to interpret the term "normal hourly fee" as used in an agreement between the parties to pay expert witness fees. As the parties in this matter debate whether or not the "normal hourly fee" as used in an agreement between the parties to pay expert witness fees. As the parties in this matter debate whether or not the "normal hourly fee" being charged is also "reasonable", this Court feels that the determination made in resolving this situation is the same as in the available case law, and that the seven factor test is therefore relevant to the issue at hand.

■ An analysis of these seven factors leads this Court to believe that Mr. Callison's rate is high. In regard to the third factor, the prevailing rates of other comparably respected available experts, the only data provided this Court is the information concerning Defendant's own expert, Professor Ribstein. The average of Mr. Callison's two fees, $170 and $300, is $235 per hour—$35 per hour more than Professor Ribstein charges. Because Mr. Callison is charging solely for his time in deposition, and not for preparation time, the rates he is actually charging in this case are much higher than Professor Ribstein, a comparable expert. The record does not reveal any substantial differences in the nature, quality or complexity of Mr. Callison's testimony which would distinguish it from Professor Ribstein's.

Plaintiffs have not stated on how many occasions Mr. Callison has charged this bifurcated rate, including the $300 per hour deposition fee, nor does either side present other

factors of great significance in determining the reasonableness of Mr. Callison's fee. However, the reason Plaintiffs have given for Mr. Callison's bifurcated fee structure is enlightening. Plaintiffs state that the adversarial nature of depositions, and the resulting stress, justifies Mr. Callison's higher rate for his appearances at depositions. It should be noted that the Court in *Jochims* stated that "subjective concerns and fears about the stress of a painstaking and carefully taken deposition by a skilled adversary—while perhaps justified—do not on this record support an enhancement of (the expert's) hourly rate by a factor of two." *Jochims* at 496.

It is the feeling of this Court that an average of Mr. Callison's two rates—$235, is a more reasonable fee to charge the Defendants. The fact that Mr. Callison's rates were presented to Defendants ahead of time makes little difference, since that presentation was made very close to the time of the deposition, and certainly after his deposition had already been scheduled.

Further, the rate of $235 per hour, although lower than what Mr. Callison feels the market will bear, is still $35 per hour higher than the rate charged by Professor Ribstein, and therefore still takes into account any differences in overhead. The $300 per hour requested strikes this Court as excessive. *See Anthony v. Abbott Laboratories,* 106 F.R.D. 461 (D.R.I.1985), (denying fee request of $420 per hour by physician who was one of only a handful of physicians with expertise to testify on subject, stating that $250 per hour was outermost periphery of reasonable range); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 955–56 (1st Cir.1984) (holding on 42 U.S.C. § 1988 claim that Harvard Law School professor was not entitled to compensated at requested rate of $275 per hour). Even in the 1994 *Hose* case, where a $400 per hour fee was allowed, the Court stated that it would have reduced the fee to $220 per hour if the Defendants had not already conceded to a reduced rate of $400 per hour. *See Hose* at 227, footnote 13.

Courts have noted that although the market may bear a higher rate, there must be some reasonable relationship between the services rendered and the remuneration to

which the expert is entitled. Unless the courts patrol the battlefield to insure fairness, the circumstances invite extortionate fee setting. *Abbott Laboratories* at 464.

Thus, this Court will order Defendants to compensate Mr. Callison at the rate of $235 per hour for the time he has spent in deposition.

### b. Robert Scott Lorimer

■ If there are few cases on what constitutes a reasonable fee for an expert witness, there are even fewer which address the problem presented with charging for Mr. Lorimer's time in deposition. Mr. Lorimer is currently employed as Plaintiffs' Chief Financial Officer, an occupation for which he is being paid an annual salary of $96,000. Mr. Lorimer is charging the Defendants $200 per hour for his 10.5 hours of work. For the reasons that follow, this Court concludes that Mr. Lorimer is not entitled to recover his requested expert witness fees from the Defendants.

Plaintiffs claim that Mr. Lorimer, although employed as Plaintiffs' Chief Financial Officer, should be compensated as an expert on this case. Under Fed.R.Civ.P. 26(b)(4)(C), "unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule...." In light of the failure of the agreement between the parties to define Mr. Lorimer as either an ordinary witness or an "expert" for purposes of compensation, this court looks to earlier decisions regarding the definition of "expert" under Fed.R.Civ.P. 26(b)(4)(C) in order to determine the rate at which Mr. Lorimer should be paid, considering the fact that he is an employee of the Plaintiff.

This Court finds *In the Matter of the Subpoena of Wendell Kegg,* 116 F.R.D. 643 (N.D.Ohio 1987) persuasive. In that products liability tire failure case, a motion was filed for payment of expert witness fees from plaintiff who deposed the witness. The District Court held that the witness, who was a retired employee of the defendant corporation, was not entitled to be compensated as

an "expert" in connection with the deposition by products liability plaintiff, when the work he had done in preparation for deposition was primarily done as part of his employment duties prior to retirement.

In making its decision, the Ohio District Court looked to the decision in *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 406 (E.D.Va. 1975). Following an exhaustive analysis of Rule 26(b), its accompanying advisory committee notes, and Black's Law Dictionary definitions of the word "expert", the Virginia District Court concluded that an "in house expert" was intended to be treated as an ordinary witness for discovery purposes.

To reach this result, the Court employed the following reasoning: Common to the several definitions [of "expert"] ... is the trait of impartiality, which constitutes a distinguishing characteristic of an expert. One aspect given by Black is "one who can see all sides of a subject." Another aspect is, "persons selected by the Court or parties in a cause, on account of their knowledge and skill...." It is evident from the definitions that an expert is expected to owe his allegiance to his calling and not to the party employing him. In order to be an expert one must be in a position to testify as an expert and not as a partisan. *Id.* at 406.

From this, the Virginia Court concluded as follows: [T]hough one be an expert, if his contact with the case is not in his capacity as an impartial observer, but is instead as one going about his duties as a loyal employee, then he "should be treated as an ordinary witness." *Id.* at 407.

This Court, like the Ohio District Court, finds this reasoning persuasive. Mr. Lorimer is not commonly employed as an "expert" witness on such matters. He drew his $200 per hour fee not from past experience, but from the prevailing rate for experts who possess a similar knowledge and background. His employment is with the Plaintiffs as Chief Financial Officer, and he should therefore be treated as an ordinary witness for purposes of compensation.

In their correspondence with the Plaintiffs, the Defendants have offered to pay Mr. Lor-

imer a pro rata share of his salary, $96,000. At that salary, Defendants stated that they would pay Mr. Lorimer $46.15 per hour for the 10.5 hours of his time spent, for a total of $484.58. In light of the foregoing, Defendants should not have to pay Mr. Lorimer even this amount.

## II. Production of Documents

■ The issue of Plaintiffs' alleged withholding of expert materials has not been formally addressed to date, and the parties to this action have continued to debate the point. Defendants have requested that the Plaintiffs turn over to Defendants all materials/documents prepared by their experts. *See* Defendants' Motion to Compel, filed December 13, 1993. This issue was further pursued in oral arguments heard February 22, 1995.

Defendants subpoenaed all notes taken by Mr. Callison, including approximately 20 pages of notes taken during conversations with Plaintiffs' counsel, relating to Mr. Callison's expert report and his proposed testimony in this case. Defendants allege that Plaintiffs removed those notes from Mr. Callison's file and have refused to produce that material, asserting a work product privilege.

In the 1983 case of *Boring v. Keller*, 97 F.R.D. 404 (D.Colo.1983), it was held that even an inadvertent disclosure of attorney work product to a testifying expert destroyed any privilege which otherwise might have attached. Specifically, the Court noted that courts have held that a waiver of the privilege exists where counsel has delivered work product to an expert to be "useful to the client," but then withheld that material from an adversary seeking to exploit the fact of this assistance in cross examining the witness. In particular, the Court stated, the protection has been waived because immunized materials should not remain undiscoverable after they have been used to influence and shape testimony. Because these notes were taken by Mr. Callison during his meetings with Plaintiffs' counsel, they certainly fall within the parameters contemplated by this Court in *Boring v. Keller*. Further, these notes consist of "facts known and opinions held by experts" within the meaning of Rule 26(b)(4), and should therefore be made available to the Defendants.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel Payment is granted only to the extent that Defendants must pay Mr. Callison's fee in the amount of $235 per hour for the time spent testifying in this matter, for the reasons stated above.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Compel Payment is denied, for the reasons stated above.

IT IS FURTHER ORDERED that the Plaintiffs produce to Defendants the notes taken by Mr. Callison in conjunction with his expert report and proposed testimony in this case, comprising approximately 20 pages, for the reasons set forth above.